UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

VICTORIA E. RAMPERSAD,

      Plaintiff,                     Case No.:

v.

DENLYN, INC., d/b/a SAVANNAH MANOR
and DENNIS MANABAT,

      Defendants,

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Victoria E. Rampersad (hereinafter "Plaintiff" or "Ms. Rampersad"), sues the Corporate Defendant, Denlyn, Inc., d/b/a Savannah Manor (hereinafter "the Corporate Defendant"), and Dennis Manabat (hereinafter "Manabat"), and alleges as follows:

This is an action under Title VII of the Civil Rights Act of 1954, as amended ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA") for Sexual Harassment, Retaliation, violation of the Florida Whistleblower Law, Negligent Supervision and for Sexual Assault and Battery. The jurisdiction of this Court is founded upon 28 U.S.C. 1343, 42 U.S.C. 2000(e)-5(f)(3) and the pendent jurisdiction of the court.

1. Plaintiff, Victoria E. Rampersad, is a female who resides in Orange County, Florida. She was employed by the Corporate Defendant at its business location in Lake County, Florida at 1027 W. Main Street, Leesburg, FL 34748.

2. The Corporate Defendant is a Florida Profit Corporation with operations in Lake County, Florida. Defendant Manabat is the owner and President of the Corporate Defendant. He resides in Clermont, Lake County Florida.

3.    Venue is proper in Lake County in that the tortious activities as alleged herein occurred in Lake County, Florida.

## GENERAL ALLEGATIONS

4.    In December of 2019, Savannah Manor hired Plaintiff as a part-time Administrator.  Plaintiff had a full-time employment at another job, but was seeking a high-level position in Assisted Living. Manabat portrayed himself as a mentor to Ms. Rampersad.

5.    At the end of 2019, Plaintiff was told that because she performed so well, she would be offered a job as the full-time Administrator. Plaintiff accepted the job offer and began employment on January 1, 2020, as Administrator.

6.    Manabat told Plaintiff that she had tremendous potential and that her employment by Savannah Manor would be an important step in her career in Administration. Plaintiff was licensed in 2012 and was excited to have the opportunity to be the Administrator of a large Assisted Living facility.

7.    Manabat began to ask Plaintiff personal questions, such as "Whether she had a boyfriend?" In the beginning the questions seemed innocent.  Later, it became apparent that Manabat was romantically obsessed with Plaintiff and searching for vulnerabilities as part of his "grooming" process.

8.    Manabat sent Plaintiff flowers.  He said that he "loved" Plaintiff and wanted to marry her.  Because Manabat was more than twice Plaintiff's age, she thought he was just being eccentric and that he could not possibly be serious about marriage since he barely knew her.

9.    On January 4, Manabat bought Plaintiff an engagement ring, an act that shocked and disconcerted Plaintiff. Plaintiff told Manabat that under no circumstances could she consider any kind of relationship.  See attached Exhibit "A."

10.    Plaintiff repeatedly told Manabat that "a marriage" was impossible. She pleaded

with him to maintain a professional working relationship and not destroy her career.

11.    On January 24, Manabat sent Plaintiff another text with a picture of the engagement ring. Manabat threatened Plaintiff to "think about your future." See Exhibit "B."

12.    Manabat left Plaintiff alone for a short period of time, but became obsessed and jealous regarding her personal life. He sent texts demonstrating his jealously of what he thought was "other men hitting on her." See attached Exhibit "C."

13.    On February 3, Manabat asked Plaintiff again "what she thought about going out with him." She said it was a terrible idea and would never happen: that he was her boss and more than twice her age. That evening Manabat sent Plaintiff an angry text message suggesting that he was going to terminate her and find another Administrator. See attached Exhibit "D."

14.    On February 14, Manabat gave Plaintiff a Valentine's Day card that read "I love you." In addition, Manabat gave her a dozen roses and a stuffed animal.

15.    Manabat was angry that Plaintiff did not spend Valentine's Day with him and sent her a text that he would stop pursuing her. He also threatened her job. See attached Exhibit "E."

16.    In late February and March, Manabat continued to tell Plaintiff that she should have a relationship with him and become "partners" in his business to enhance her career and future. Manabat threatened Plaintiff continuously about "her future." Plaintiff repeatedly reminded Manabat that a relationship would never happen.

17.    On February 15, Manabat acknowledged his love was "a one-way street." He described himself as a "very jealous guy" who could not "help feeling this way." See attached Exhibit "F."

18.    On February 17, Manabat sent Plaintiff another text proclaiming his "love" and demonstrating his delusion about "marriage." See attached Exhibit "G." Plaintiff changed the subject.

3

19.     Manabat was obsessed that Plaintiff was "cheating" on him.  On February 28, Manabat sent Plaintiff a text warning her "don't cheat on me. Okay?" When Plaintiff asked why he was saying such things to her.  Manabat responded "Because I love you don't you realize that by now." See attached Exhibit "H."

20.     On February 29, Manabat sent Plaintiff another text message signaling his obsession with Plaintiff.  He acknowledged that she would not accept a ring. See attached Exhibit "I."

21.     In March, Manabat continued to link "marriage" to Plaintiff's future as an Administrator.  On March 24, Manabat sent Plaintiff a text showing that he was delusional about "when we get married."  See attached Exhibit "J."

22.     On March 27, around midnight, Manabat showed up uninvited to Plaintiff's home. Plaintiff's roommate answered the door. Manabat tried to force his way in. Plaintiff told Manabat to leave. Manabat asked why Plaintiff would not go out with him.  Manabat finally left. Plaintiff called the police and made an incident report.

23.     On May 8, Manabat bought flowers for Plaintiff and brought them to the office which embarrassed Plaintiff and the staff.  Plaintiff ignored the flowers.  Manabat sent Plaintiff a text stating the flowers were not appreciated and that she had "insulted [him] again."  See attached Exhibit "K."

24.     Manabat told Plaintiff several times that he wanted to "put a child in her" so that he could have a loyal and reliable administrator that he could trust.

25.     On April 23, Manabat came into Plaintiff's office to discuss a call he said he received from the EEOC inquiring about discrimination.  Manabat asked "I haven't done anything wrong: I only wanted to marry you."  Manabat stood over Plaintiff and required that she write a statement to the EEOC that there had been no discrimination at the facility.

4

26.     In May, Manabat told Plaintiff that he was coming to her house "no matter what." Plaintiff begged him not to come. She told her roommate to call the police if he showed up. Manabat did not appear that night.

27.     On May 10, Manabat again brought up delusion of wanting to marry Plaintiff. He again weaved in the promise of job benefits and how it would affect her future See attached Exhibits "L" and "M."

28.     In June, Manabat was confronted by Alex Dee, the IT consultant. He told Manabat to leave Plaintiff alone and that what he was doing was improper. Dee was aware of Manabat's sexual obsession with Plaintiff and his mistreatment of her.

29.     Employees at Savannah Manor repeatedly told Plaintiff that Manabat was sexually and romantically obsessed with her. Manabat constantly called the office and asked employees about Plaintiff. He tried to find out where she was going after work.

30.     On June 11, Manabat instructed Plaintiff to book a flight to Chicago "to meet his family." Plaintiff told Manabat that he was seriously misguided and that she had no intention of going. Manabat came into Plaintiff's office and insisted that she book tickets for a flight. Plaintiff booked the flights, but refused to go.

31.     Manabat told Plaintiff that she would be replaced if she did not marry him. He said that was the only way that he could trust her. Plaintiff rejected the demands with increasing fear.

32.     On June 18, Manabat told Plaintiff that he booked a hotel room and scheduled a couples' massage appointment at the Mission Inn located in Howey-in the-Hills, Florida. He said that if she met him at the Misson Inn, he would give her a "nice bonus." Plaintiff refused. When Plaintiff went into work that Friday, Manabat gave her work assignments to Kristine.

33.     On June 24, Manabat booked another hotel room and scheduled a couples'

massage for June 25. Manabat told Plaintiff this time that he would give her a $1000 bonus if she went. Plaintiff said absolutely not. Manabat begged for "just 1 hour!" Plaintiff said "No!" Manabat pleaded that he was "so turned on by her." He said she would be "getting a nice bonus for only an hour." Plaintiff refused. Manabat continued to beg "for only 1 hour" with Plaintiff up and until her constructive termination.

34. After being refused, Manabat stormed into Plaintiff's office and said she wasted his money. He said he would rebook the hotel anyway and that "she would go!" Manabat came towards Plaintiff. He tried to kiss her. Plaintiff pulled away. Manabat grabbed Plaintiff's head and turned her face towards his. He kissed her and stuck his tongue in her mouth. Plaintiff told a co-worker about this sexual assault.

35. Plaintiff discovered from co-workers that Manabat had done the same kinds of things to a woman named Mildred Sorenson.

36. Manabat forcibly kissed Plaintiff 10 to 15 times on different occasions. He also repeatedly slapped or grabbed her on the rear.

37. On July 3, Manabat threatened to punch Plaintiff in the face.

38. On July 8, Plaintiff again refused to go to a hotel with Manabat. Manabat told Kristine that Plaintiff was incompetent. Plaintiff's co-workers knew that Manabat was wild and out-of-control in the office because Plaintiff again refused to go to a hotel with him.

39. On July 10, Manabat again instructed Plaintiff to rebook a trip to Chicago to meet his family. Plaintiff said she would never go. Manabat became angry and said sarcastically "your choice!" Manabat nevertheless sent a text instructing Plaintiff to "re-book."

40. In mid-July, Manabat came into Plaintiff's office, came up to her quickly and tried to kiss her. Plaintiff was terrified of being alone with Manabat and pulled away. Manabat grabbed Plaintiff and forcibly kissed her on the lips before she could pull away.

6

41.    On July 23, Manabat presented Plaintiff with a non-competition contract.  He demanded that she sign it immediately.  Plaintiff refused to sign the contract.

42.    On Friday, July 24, Plaintiff returned to her office after lunch.  Manabat was sitting at her desk. Manabat told Plaintiff that she did not deserve an office or her position. Manabat said that he "would never give up until she said yes." He yelled "don't be stupid!" He concluded, "Think about your future and how all of this could be yours."   Plaintiff cried and said she worried about her job and career, but could never sell herself like that.

43.    In the afternoon of July 24, Manabat confronted Plaintiff and demanded "why aren't you going to Chicago with me?" Plaintiff did not respond. Manabat said "you know I could really just slap your f*cking face right now, you know that?" Manabat then sat on Plaintiff's desk with his legs open, exposed his groin area and said "come sit on my lap, come here now!" Plaintiff said "no, stop it!" Manabat pushed Plaintiff. He backed her into a tight area in the L shape of her desk. Manabat grabbed, hugged her and kissed her. Plaintiff pushed him off and ran to Kristine's office. Kristine told Plaintiff she needed to get out quickly. Manabat appeared and said "Victoria let me walk you out to your car." He blocked the doorway of Kristine's office with Plaintiff inside. To divert Manabat, Kristine said "actually, Dennis, I wanted you to review something before you leave." As Plaintiff tried to walk by, Manabat grabbed her. Plaintiff pulled away and left the building terrified.

44.    Manabat demanded that Plaintiff sign the non-competition agreement immediately.

45.    On July 27, Manabat removed more of Plaintiff's job responsibilities.  He took files and contracts away that she had been working on. Plaintiff and Shantell Hurst discussed that this was retaliation for her refusing to meet him at the Mission Inn in return for a bonus. Hearst told Plaintiff that Manabat had done this kind of thing before.

46.    On July 29, Manabat asked Plaintiff if they were "still on."    Manabat was delusional about a relationship with Plaintiff. He said "I know that you can't deny it." He said he still had an engagement ring that he bought her. He told Plaintiff to "think about how all of this could be yours." Plaintiff told Manabat that he was "out of his mind." Manabat said "we will see about that!"

47.    Manabat told Plaintiff that he owned a gun.

48.    On August 4, Plaintiff was forced to leave due to Manabat's relentless sexual harassment, threats and humiliating misconduct.

49.    On October 14, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") which dual-filed with the Florida Commission on Human Relations ("FCHR"), pursuant to the work sharing agreement between the EEOC and FCHR.  On May 4, 2021 the EEOC issued a Notice of Right to Sue entitling Plaintiff to file her claims under Title VII in this court. Because more than 180 days have passed since Plaintiff filed her charge, this action under the FCRA has been timely commenced.

## COUNT I - SEXUAL HARASSMENT

50.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 49 above.

51.    This is an action for sexual harassment under Title VII and Chapter 760.10 et. seq, the Florida Civil Rights Act of 1992 ("FCRA").    The Corporate Defendant was an "employer" of Plaintiff as defined by Title VII and the FCRA.

52.    During Plaintiff's employment with the Corporate Defendant, she was subjected to sexual harassment by Manabat, owner and President, which affected the terms, conditions, and privileges of her employment and was of such a severe and pervasive nature so as to alter the conditions of her employment and create an abusive and hostile work environment.  The

8

Corporate Defendant was placed on actual notice of the sexual harassment, but failed to take prompt and effective remedial action.

53.    The Corporate Defendant is directly liable for the sexual harassment by Manabat since it has failed to take prompt remedial action. Alternatively, the Corporate Defendant is directly liable for the sexual harassment since tangible job actions taken against Plaintiff by the Corporate Defendant. Manabat's offers of cash bonuses were also a form of quid pro quo sexual harassment.

54.    As a result of the wrongful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish, and other harms and losses.

WHEREFORE, Plaintiff, Victoria E. Rampersad, demands judgment for damages against the Corporate Defendant for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, or reinstatement, together with compensatory and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Title VII and the FCRA, Chapter 760.10, sections 760.01-760.11 et seq.

## COUNT II - RETALIATION

55.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 49 above.

56.    At all times material to this action, there has been in full force and effect a provision of Title VII and Florida law, Chapter 760.10 et seq, of the FCRA that prohibits discriminatory and retaliatory employment practices against employees because they have opposed unlawful employment practices and have complained of such unlawful practices.

57.    Plaintiff rejected and complained regarding Manabat's sexual harassment.

9

Accordingly, Plaintiff engaged in protected opposition conduct and was protected against retaliation under the FCRA.

58.     Plaintiff was emotionally distraught since the Corporate Defendant tolerated and permitted Manabat's sexually inappropriate and offensive conduct.

59.     Manabat had final decision-making authority over all employment and personnel decisions of the Corporate Defendant.

60.     The Corporate Defendant took retaliatory personnel action against Plaintiff because she had objected to the illegal workplace behavior, including but not limited to, removing her duties, threatening her termination and forcing her to resign.

61.     As a result of the unlawful employment practice complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconvenience, mental anguish and the loss of enjoyment of life.

WHEREFORE, Plaintiff, Victoria E. Rampersad, demands judgment for damages against the Corporate Defendant for including, but not limited to, lost wages, benefits and other compensation in the past and future, together with prejudgment interest on the outstanding obligation, and/or reinstatement, together with compensatory and punitive damages, attorneys' fees and costs and such other relief as may be appropriate under Title VII and Chapter 760.10, sections 760.01-760.11 et seq.

## COUNT III – FLORIDA WHISTLEBLOWER ACT

62.     Plaintiff realleges and incorporates herein paragraphs 1 through 49 above.

63.     This is an action under the Florida Whistleblower Act.  The Corporate Defendant was at all times material to this action an "employer" as defined by the Florida Whistleblower Act, Section 448.101-448.105 (Fla. Stat.).

64.     Plaintiff was an "employee" of the Corporate Defendant pursuant to the Florida

10

Whistleblower Act, Section 4481.101(2).

65.    During the term of Plaintiff's employment, she objected to an activity which was in violation of the Florida Civil Rights Act of 1992, as amended.   In particular, Plaintiff objected to a hostile work environment because of sexual harassment.

66.    The Corporate Defendant took retaliatory personnel actions against Plaintiff because she had objected to the illegal workplace behavior, including but not limited to, removal of her duties and constructive discharge.

WHEREFORE, Plaintiff, Victoria E. Rampersad, requests compensatory damages for lost wages, benefits and other remuneration and all other compensatory damages allowable under Florida law, against the Corporate Defendant.   Plaintiff also requests that the Court award reasonable attorneys' fees, costs and expenses associated with this action pursuant to section 448.104.

## COUNT IV – NEGLIGENT SUPERVISION

67.    Plaintiff realleges and incorporates herein paragraphs 1 through 49 above.

68.    While employed by the Corporate Defendant, Plaintiff was sexually harassed by Manabat.

69.    Plaintiff was exposed to Manabat as a direct consequence of his agency relationship with the Corporate Defendant.

70.    Plaintiff was within a zone of risk reasonably foreseeable by the Corporate Defendant.

71.    The Corporate Defendant owed Plaintiff a duty to exercise reasonable care in the supervision of its management.

72.    The Corporate Defendant had actual notice that Manabat engaged in sexual harassment of female employees during the term of his agency with the Corporate Defendant.

11

73.     The Corporate Defendant breached its duty to Plaintiff by negligently supervising Manabat after receiving actual and constructive notice of his unfitness.  It was unreasonable for the Corporate Defendant not to take remedial action such restricting Manabat's access to young female employees, appropriate supervision or conducting sexual harassment seminars.

74.     As a direct and proximate result of the negligence of the Corporate Defendant, Plaintiff has sustained the following past and future damages:   a. mental pain; b. severe emotional distress; c. embarrassment; d. humiliation; e. mental anguish; f. loss of the capacity for the enjoyment of life; g. impairment of working ability; h. loss of dignity; and I. loss of diminution of earning or earning capacity.

WHEREFORE, Plaintiff demands judgment in her favor against Defendants and awarding compensatory damages together with any further relief that is appropriate and just.

## COUNT V – ASSAULT AND BATTERY

75.     Plaintiff realleges and incorporates herein paragraphs 1 through 49 above.

76.     Manabat intentionally and in an unlawful manner engaged in unsolicited and unwelcome physical contact of a sexual nature with Plaintiff by, among other things, kissing, licking, physically grabbing, moving towards and touching her against her will, creating a fear in Plaintiff of imminent peril. The most vicious sexual assault and battery occurred when Manabat grabbed Plaintiff and forcibly kissed her while sticking his tongue in her mouth.

77.     The Corporate Defendant is vicariously liable for the intentional torts committed by their agent who was aided in the commission of said torts by virtue of the agency relationship.

78.     The batteries committed upon Plaintiff by Manabat were unsolicited, unwelcome, and unwanted by Plaintiff and she did not consent to any of his actions.

79.     As a direct result of the assaults and batteries perpetrated upon Plaintiff, she has

suffered the following damages: a. Mental pain; b. Severe emotional distress; c. Embarrassment; d. Humiliation; e. Mental anguish; f. Loss of the capacity for the enjoyment of life; g. Impairment of working ability; h. Loss of dignity; i. Loss of or diminution of earning or earning capacity.

WHEREFORE, Plaintiff, Victoria E. Rampersad, demands judgment for compensatory damages against the Corporate Defendant and Defendant Manabat in an amount within the jurisdictional limits of this Court of more than $30,000.00, plus costs and for such other relief as to be determined by the Court.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL COUNTS.**

Ronald W. Fraley
Florida Bar No.: 0747025
The Fraley Firm, P.A.
412 E. Madison Street, Suite 1213
Tampa, Florida 33602
Primary Email: rfraley@fraleylawflrm.com
Secondary Email: phuret@fraleylawflrm.com
Telephone: (813) 229-8300
Attorney for Plaintiff

# EXHIBIT "A"





# EXHIBIT "B"

## January 27



# EXHIBIT "C"

 

DENNIS Savanna manor >

Thu, Jan 30, 10:34 PM

Thank you Dennis. I am going to sleep now. You make me self conscious of my work attire. I do know I have to dress better. Have a good night

Fri, Jan 31, 7:56 PM

I will dress you up really good! I'll take you to a salon 💇 the only problem is I don't want any other guy hitting on you when you get your make over. And I don't want you to be flirting on them too! Your hair is perfect 💙 you look like a real Irish woman 🍀. You know my first wife is a Scottish blonde and blue eyes. I was only 19 years old when we got married in Chicago.

Her dad is an American her mom is from Scotland 💌

Wow she sounds very nice

# EXHIBIT "D"

 

DENNIS Savanna manor

Mon, Feb 3, 8:27 PM

You are heartless Victoria!
(sent with Slam Effect)

Then there's nothing to talk about like you said!

Just leave it the way it is!

I don't have time to train an administrator.
(sent with Slam Effect)

I won't be there tomorrow

I will train someone. I won't be in either. But I will place an ad on indeed. I will not be blocked any longer. I do what I can but you decided to make it personal. I will arrange interviews and work on my own transition. I love the facility but you have made this personal. Blocking me for what reason I don't know.

# EXHIBIT "E"



DENNIS Savanna manor >

Fri, Feb 14, 9:33 PM

I think I'm just going to stop pursuing you. You also mentioned that your grandmother will not let you take the ring from me I don't know why. I have an honest intentions! I'm really very tired and frustrated in pursuing you. It seems that everything I do is not working .. I feel that you don't like me or don't have an interest in a relationship with me. Just be honest with me. I need an answer now and also when I talk to your Grandma I don't feel the friendliness and warmth from her. Very stern tone of voice. As far as your job is concern you're doing a fine job.

9:33 PM

↺ Replay

Putting an add tomorrow    10:22 PM

For another administrator    10:30 PM

# EXHIBIT "F"

---------- Forwarded message ---------
From: **Dennis Manabat** <dennismanab01@gmail.com>
Date: Sat, Feb 15, 2020 at 6:22 PM
Subject: Sorry again
To: Administrato/ Victoria Rampersad <victoria.savannahmanor@gmail.com>

I realize that I'm being too possessive on you due to my deepest feelings towards you! I feel that my love for you is a one way street! I want to feel and act Normal on our relationship, I'm a very jealous guy, you should know that by now. I can't help feeling this way to you.

Sent from my iPhone

# EXHIBIT "G"



DENNIS Savanna manor >

Mon, Feb 17, 8:28 AM

> Dennis I won't be in this morning. If you would like we can have a meeting this week to discuss my direction at the facility.

Also , we have to prepare the paperwork for the new admissions and sign your adjustment on your salary. I love 🖤 you.

I guess, my only security from you I s the engagement ring 💍 and eventually the marriage !

> I am dedicated to Savannah Manor I want to have a positive influence

Sorry, sweetheart! Just my emotions getting in the way. And jealousy maybe! I'm hoping that I don't have any reasons to get jealous!

# EXHIBIT "H"

Don't cheat on me. Okay?

Are you cheating on me.

I'm hoping that because I'm very faithful or loyal to you

Why do you ask these questions

Because I love you don't you realize that by now

I just want you to be faithful , honest and loyal to me. And I'm the same with you. That's all I'm asking from you.

I just want you to be faithful , honest and loyal to me. And I'm the same with you. That's all I'm asking from you.

I'm home now.

Fri, Feb 28, 10:30 PM

I'm home also. I don't know what you are saying

Another call out tonight. The new guy that you like. The lpn in school. He says he is sick and has a note on his first night.

Ryeema is going to work a double from 3-11 , 11-7. I have another girl she is from Blue Haven assisted living. She is older but has experience and level ii background. Shantell interviewed her with me and liked her as well. She is coming Monday to complete new hire

# EXHIBIT "I"

DENNIS Savanna manor >

Sat, Feb 29, 12:59 AM

I think that's why you can't say it that you're seeing someone. You know and I know that it's true. That's why you won't take the ring. F don't worry I know all about it.

Last week you didn't spend the night with your Grandma I know that.

And you weren't home either

Sat, Feb 29, 9:37 AM

Good Morning

Sat, Feb 29, 11:19 AM

Good Morning  again.

Good morning

I just got done with my Tennis game. Had a good work out with Francesco . Kind of windy

# EXHIBIT "J"

 

DENNIS Savanna manor >

Last she brought us 6 packs of 100 each she is very scarce on supplies. We were lucky enough that she brought masks yesterday. I will ask her

I'll tell staff about dishwashing rubber but I hate to see them waste them and discard them. Those are $$

I'll try to find some more supplies tomorrow.

I'm beginning to feel comfortable with you handling this issue..

Good

But, maybe even more when we get married that way I'll let you to have full control of things there ,do you understand?

# EXHIBIT "K"

DENNIS Savanna manor >

Fri, May 8, 10:09 PM

I shouldn't have brought you the flowers today. I felt they were not appreciated and I feel that you even begrudge them. It's okay, I'll put them away tomorrow.

Ok thank you

You have insulted me again

Shantel still has not returned

It is a lot. To fill her schedule. Very disgusted.

You're working tomorrow? So am I to help Suresh so the room will ready for Monday

I will be there tomorrow evening and Sunday all day

Don't worry we'll find someone. We'll pay them better wages

Tomorrow evening to assess

# EXHIBIT "L"



**6:10**            LTE

DENNIS Savanna manor >

I really cannot wait to expand. That's where the money is, if you understand what I'm talking about.

I do understand

Stick with me and you'll be taken care of

And, you can't have your cake and eat it too ! (Proverb ) old saying! I hope you understand what I'm trying to convey to you!

I don't understand but I'm focused on the goal of improving and expanding the business

Yes, I agree to that! Our relationship! I have grown to love you and I have propose to marry you! I just don't want to be cheated on!..I respect you

iMessage

         

# EXHIBIT "M"

DENNIS Savanna manor >

I wanna hear it can you say it?

Listen,We're gonna get marry next and I haven't heard that magic word from you yet! What's the matter?

You cannot simply avoid this issue!!!!

Text Message

Listen,We're gonna get marry next and I haven't heard that magic word from you yet! What's the matter?

You cannot simply avoid this issue!!!!

iMessage

My phone died

Really?!!!!!!!!!! Very funny 😄

It did. You're insane

Sorry 😔